UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SOUTHEAST FARMS, INC.,

                     Plaintiff,

   -against-                                  5:23-CV-00100 (LEK/ML)

MARTENS FRESH, LLC, *et al.*,

                     Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On January 25, 2023, Plaintiff Southeast Farms, Inc. ("Southeast Farms"), commenced this action against Defendants Martens Fresh, LLC ("Martens Fresh") and Timothy Martens (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). Plaintiff brings this action to enforce its statutory rights against Defendants under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499a, *et seq.*, including the PACA statutory trust ("PACA Trust"), 7 U.S.C. § 488e(c), and also seeks to bring additional "federal common law, and state law" claims. Compl. at 1. On January 30, 2023, Plaintiff filed an emergency motion for a temporary restraining order ("TRO"), Dkt. No. 4 ("Motion for TRO"), and a motion for a preliminary injunction, Dkt. No. 5 ("Motion for Preliminary Injunction").

On January 31, 2023, the Court granted Plaintiff's Motion for TRO without notice to Defendants, entering the TRO on Tuesday, January 31, 2023, at 6:30 PM and making it effective for fourteen days. Dkt. No. 6 at 11 ("January 2023 Order").[1] Plaintiff served the January 2023 Order and other relevant documents on Defendants on February 2, 2023. Dkt. Nos. 7–8.

---

[1] In the January 2023 Order, the Court also granted Plaintiff's request for expedited discovery.

Subsequently, the Court held a hearing on Plaintiff's Motion for Preliminary Injunction on February 8, 2023. To date, neither Defendant has appeared in the Docket, and neither appeared at the February 8, 2023, hearing. See generally Docket. For the reasons that follow, the Court grants Plaintiff's Motion for Preliminary Injunction as to both Defendants.

## II.   BACKGROUND

### A.   Facts Set Forth in Plaintiff's Complaint

Plaintiff's factual allegations are detailed in the January 2023 Order, familiarity with which is assumed. January 2023 Order at 1–3.

### B.   Subsequent Developments

In the January 2023 Order, the Court granted Plaintiff's Motion for TRO without notice to Defendants. January 2023 Order at 11. The Court entered the TRO on Tuesday, January 31, 2023, at 6:30 PM and made it effective for fourteen days. Id. The Court also granted Plaintiff's request for expedited discovery. Id. at 9–11. Additionally, the Court scheduled a hearing for February 8, 2023, at 11:00 AM on Plaintiff's Motion for Preliminary Injunction. Id. at 11. The Court directed Plaintiff to personally serve Defendants with the January 2023 Order, the Motion for TRO, and the Motion for Preliminary Injunction by 6:30 PM on February 2, 2023. Id. at 14. Plaintiff filed an affidavit of service stating that Martens Fresh had been served the relevant documents through service on the New York State Secretary of State at 3:00 PM on February 2, 2023. Dkt. No. 7. Plaintiff also filed an affidavit of service stating that Timothy Martens had been served the relevant documents through service on Trish Martens, Plaintiff's wife, a person of suitable age and discretion at Martens' last known residence, on February 1, 2023, at 2:02 PM. Dkt. No. 8.

The January 2023 Order directed Defendants to file their papers in response to Plaintiff by February 7, 2023, at 10:00 AM. January 2023 Order at 14. To date, neither Defendant has appeared in the Docket, and neither Defendant filed papers in response to Plaintiff. See generally Docket.

The Court held a hearing on Plaintiff's Motion for Preliminary Injunction on February 8, 2023, at 11:00 AM. Plaintiff's attorney appeared at the hearing, but neither of the Defendants appeared at the hearing, nor did any attorney appear at the hearing on behalf of Defendants. Dkt. Text Minute Entry dated 02/08/2023. At the hearing, this Court granted Plaintiff's Motion for Preliminary Injunction, and stated that it would subsequently issue a written decision. Id.

### III. LEGAL STANDARD

"[Federal] Rule [of Civil Procedure] 65(b) governs Temporary Restraining Orders ('TROs') and provides, in relevant part, that the court may issue a temporary restraining order, without written or oral notice to the averse party or its attorney if 'specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.'" Houghtaling v. Eaton, 559 F. Supp. 3d 164, 168 (W.D.N.Y. 2021) (quoting Fed. R. Civ. P. 65(b)(1)(A)).

Rule 65(b) also states that "[i]f the [temporary restraining] order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character." Fed. R. Civ. P. 65(b)(3). "At the hearing, the party who obtained the [temporary restraining] order must proceed with the motion [for a preliminary injunction]; if the party does not, the court must dissolve the order." Id.

"'It is well established that in [the Second] Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.'" Basank v. Decker, 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020) (quoting Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)). "'The fundamental purpose in granting preliminary injunctive relief has always been to preserve the court's ability to later render a meaningful final decision on the merits by preventing irreparable harm in the interim.'" Fairfield Cnty. Med. Ass'n v. United Healthcare of New England, 985 F. Supp. 2d 262, 270 (D. Conn. 2013) (quoting H&R Block E. Tax Servs., Inc. v. Brooks, No. 00-CV-1332, 2000 U.S. Dist. LEXIS 19369, at *4–5 (D. Conn. 2000)), aff'd as modified sub nom. 557 Fed. App'x 53 (2d Cir. 2014)). "'It is axiomatic that the contours of an injunction are shaped by the sound discretion of the trial judge . . . .'" Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH, 843 F.3d 48, 72 (2d Cir. 2016) (quoting Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 265 (2d Cir. 2014)).

"In most cases, a party seeking a preliminary injunction must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 149 (2d Cir. 1999).

"When ruling on an application for a preliminary injunction or TRO, the courts have taken into account the following four factors: (1) the significance of the threat of irreparable harm to the plaintiff if the injunction is not granted; (2) the balance between the movant's alleged harm and the harm that granting the injunction would inflict on the opposing party; (3) the probability that the plaintiff will succeed on the merits; and (4) whether a permanent injunction would disserve the public interest." Fairfield Cnty., 985 F. Supp. 2d at 271.

IV.   **DISCUSSION**

In assessing Plaintiff's Motion for Preliminary Injunction, the Court will adhere to its reasoning in the January 2023 Order granting Plaintiff's Motion for TRO. The Court finds it is proper to do so for two reasons. First, as noted above, in the Second Circuit the standard for the entry of a TRO is the same as the standard for the entry of a preliminary injunction. See Basank, 449 F. Supp. 3d at 210. Second, neither Defendant has sought to contest Plaintiff's Motion for Preliminary Injunction through written filings or at the February 8, 2023, hearing; accordingly, the Court was not provided with additional factual claims or legal arguments challenging the findings of the January 2023 Order. While the Court will address each factor required for assessing a motion for a preliminary injunction in this Memorandum-Decision and Order, a more detailed discussion of these factors is set forth in the January 2023 Order, familiarity with which is assumed. January 2023 Order at 4–9.

A.   **Jurisdiction**

As discussed in the January 2023 Order, the Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, specifically PACA. January 2023 Order at 5.

B.   **Motion for Preliminary Injunction**

"Under § 5(c) of PACA, 7 U.S.C. § 499e(c), buyers of produce subject to PACA are required to hold proceeds from the sale of such produce in trust for the benefit of the sellers." Horizon Mktg. v. Kingdom Int'l, Ltd., 244 F. Supp. 2d 131, 135 (E.D.N.Y. 2003) (citing 7 U.S.C. § 499e(c)(2)). "This is meant to ensure that sellers are paid in full from the proceeds derived from the re-sale of the produce." Horizon, 244 F. Supp. 2d at 135. "Under the statute, the trust is formed the moment the produce is shipped to the buyer and remains in effect until the seller is paid in full." Id. (citing 7 C.F.R. § 46.46(c)(1); In re Kornblum & Co., 81 F.3d 280, 286

(2d Cir. 1996); and Matter of Snyder, 184 B.R. 473 (D. Md. 1995)). "Buyers who dissipate or otherwise spend the proceeds of the trust without making full payment to the seller are in breach of their fiduciary duties." Horizon, 244 F. Supp. 2d at 135.

### 1. Irreparable Harm

In the January 2023 Order, the Court relied on the Eastern District of New York Horizon case when assessing irreparable harm. January 2023 Order 5–7. Horizon stated: "[T]he irreparable harm in this case, as in other PACA cases, is the risk that a produce buyer will have dissipated the PACA trust without paying the produce seller, thus leaving the produce seller out of luck and out of money." Horizon, 244 F. Supp. 2d at 140. Horizon based its decision on congressional legislative history: "[T]he protection of produce sellers from this predicament was one of the main reasons cited by Congress in enacting the trust provisions of PACA." Id.

In this case, Plaintiff alleges that Martens Fresh is experiencing serious financial problems, and is unable to pay the amount owed to Southeast Farms. January 2023 Order at 6. The Court finds that the reasoning set forth in Horizon and in the legislative history of PACA—which the Court followed in the TRO context in the January 2023 Order—also applies here in the preliminary injunction context. Accordingly, the Court finds that Plaintiff has demonstrated a significant threat of irreparable harm if the preliminary injunction is not granted. See Fairfield Cnty., 985 F. Supp. 2d at 271. The Court also finds that Plaintiff's alleged harm outweighs the harm that granting the injunction would inflict on Defendants. See id.

### 2. Likelihood of Success on the Merits

The court in Horizon faced a similar situation to the facts of this case, stating:

> Both plaintiffs and defendants have PACA licenses and are therefore subject to the statute. Plaintiffs have submitted unpaid invoices, all of which bear the exact language required by the statute, thus satisfying the notice requirement and preserving their interest

6

> in the trust. . . . Having provided produce as required, and not having been paid, as agreed, plaintiffs have established their entitlement to payment under PACA.

244 F. Supp. 2d at 140. In the January 2023 Order granting the TRO, the Court found Plaintiff had shown that Plaintiff and Martens Fresh had PACA licenses and that Timothy Martens was listed as Martens Fresh's reported principal. January 2023 Order at 7. The Court also noted that Plaintiff had issued produce invoices containing the language required by PACA, see 7 U.S.C. § 499e(c)(4), to provide Defendants with notice of Plaintiff's intent to preserve its rights to the PACA Trust. January 2023 Order at 7. Based on these factors, in the January 2023 Order the Court found in the TRO context that Plaintiff was likely to succeed on the merits. Id. at 8. Likewise, in the context of a preliminary injunction, the Court finds that Plaintiff is likely to succeed on the merits.

### 3. Public Interest

The January 2023 Order stated that there was a public interest in granting a TRO, because Congress created the PACA Trust to protect sellers of produce from buyers who do not pay sellers. Id. at 8. Here, the Court concludes that the public interest factor similarly weighs in favor of granting Plaintiff's Motion for Preliminary Injunction. Accordingly, the Court will grant Plaintiff's Motion for Preliminary Injunction as to both Defendants.[2]

**C. Request for Expedited Discovery**

The Court granted Plaintiff's request for expedited discovery in the January 2023 Order, id. at 9–11, and sees no reason to alter that decision here.

---

[2] In the January 2023 Order, the Court "note[d] that 'several courts in this circuit and others, have held that in PACA cases, individuals who are principals in corporations which bought produce, but failed to pay, are individually liable for breach of their fiduciary duties.'" January 2023 Order, at 9 n.1 (quoting Horizon, 244 F. Supp. 2d at 146).

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's motion for a preliminary injunction (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED**, that Defendants Martens Fresh, LLC, and Timothy Martens and their respective officers, agents, servants, employees, subsidiaries or related companies, financial and banking institutions, and attorneys, together with all other persons in active concert or participation with the aforementioned parties, are hereby enjoined and restrained from dissipating, paying, transferring, encumbering, assigning or selling any assets of Martens Fresh, LLC, subject to the PACA Trust or paying any PACA Trust Asset to any creditor, person, or entity until further order of this Court, full payment to Southeast Farms, Inc. by cashier's check or certified check in an amount equal to $19,440.00, plus attorneys' fees, costs, and interest at 1.5% per month, or upon Southeast Farms, Inc.'s agreement; and it is further

**ORDERED**, that the assets subject to this order include all of Martens Fresh, LLC's assets, unless it, Timothy Martens, or a third party can prove to this Court that a particular asset is not derived from perishable agricultural commodities, inventories of food or other products derived from perishable agricultural commodities or receivables or proceeds from the sale of such commodities or products. Provided, however, Martens Fresh, LLC, may sell perishable agricultural commodities or products derived from perishable agricultural commodities for fair compensation, without right of set-off, on the condition that Martens Fresh, LLC accounts for and maintains the proceeds of any sale subject to this Order; and it is further

**ORDERED**, that Martens Fresh, LLC, shall serve a copy of this Order on all banking or financial institutions with which it conducts business, or any person or entity who may be

holding assets for or on behalf of it. Within **three (3) days** after serving this Order upon these persons or entities, Martens Fresh, LLC, shall file a Certificate of Service with this Court that lists the persons or entities that were served with this Order; and it is further

**ORDERED**, that any banking or financial institutions receiving actual notice of this Order, pursuant to Federal Rule of Civil Procedure 65(d)(2), shall (a) accept checks, Automatic Clearing House ("ACH") payments, or wire transfers Martens Fresh, LLC, deposits into any account Martens Fresh, LLC, maintains at that institution and (b) credit each deposit amount to the account balance; and it is further

**ORDERED**, that no later than **three (3) calendar days** after receiving notice of this Order, any banking or financial institutions with which Martens Fresh, LLC, conducts business shall provide Southeast Farms, Inc.'s counsel with the amount currently on deposit for each account under Martens Fresh, LLC's name; and it is further

**ORDERED**, that for each account under Martens Fresh, LLC's name, the banking or financial institution shall produce copies of bank account statements, showing all debit and credit items, checks, wire confirmations, check registers, and check stubs from June 1, 2022, through the date of the production; and it is further

**ORDERED**, that no later than **five (5) calendar days** after receiving notice of this Order, Martens Fresh, LLC, shall produce to Southeast Farms, Inc.'s attorney the following documents: bank account statements, showing all debit and credit items, checks, wire confirmations, check registers, and check stubs from June 1, 2022, through and including the date of this Order; a current detailed, aged accounts payable statements; current detailed, aged accounts receivable statements; and list of all assets and equipment owned at any time over the last year from the date of this Order; and it is further

**ORDERED**, that this Order binds the parties to this action, as well as banking and financial institutions and all other persons or entities receiving actual notice of this Order by personal service; and it is further

**ORDERED**, that the $19,440.00 in PACA Trust Assets belonging to Southeast Farms, Inc., and in Martens Fresh, LLC's possession will serve as Southeast Farms, Inc.'s security for this preliminary injunction pursuant to Federal Rule of Civil Procedure 65(c); and it is further

**ORDERED**, that the Clerk of the Court is directed to serve a copy of this Memorandum-Decision and Order on Plaintiff and on Defendants at the addresses set forth in Plaintiff's affidavits of service (Dkt. Nos. 7–8) in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    February 9, 2023
          Albany, New York

LAWRENCE E. KAHN
United States District Judge